## United States District Court

DISTRICT OF DELAWARE

UNITED STATES OF AMERICA

v.

IGAL SHARON LEVY

Criminal Complaint

CASE NUMBER:  06- 47M

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about   October 2005 and January through April 2006   in   New Castle   County, in the District of Delaware,  defendant committed the offense of conspiracy to commit access device fraud, in violation of Title _____ 18 _____ United States Code, Section(s)  1029(b)(2)   and making a false statement on an application for loan or credit, in violation of Title _____ 18 _____ United States Code, Section(s)  1014 .

I further state that I am a(n)   Special Agent, United States Secret Service   and that this
                                                                 Official Title
complaint is based on the following facts:

See attached Affidavit

Continued on the attached sheet and made a part hereof:    Yes

FILED

APR 2 0 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

_____
Signature of Complainant
Michael S. Armstrong
Special Agent, United States Secret Service

Sworn to before me and subscribed in my presence,

 April 20, 2006 _____    at    Wilmington, DE _____
Date                                                              City and State

 Honorable Mary Pat Thynge
 United States Magistrate Judge _____    _____
Name & Title of Judicial Officer                  Signature of Judicial Officer

## UNITED STATES DISTRICT COURT

### DISTRICT OF DELAWARE

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Michael S. Armstrong, being duly sworn, depose and say:

1. I am a Special Agent with the United States Secret Service and have been so employed since February 2003. I am currently assigned to the Wilmington, Delaware, Resident Office. My duties include the investigation of federal crimes including access device fraud, credit card fraud and computer fraud. The training given to U.S. Secret Service Special Agents includes approximately six months of field and classroom training in all aspects of access device fraud, including the detection of such crimes. Prior to my employment with the U.S. Secret Service, I graduated from the Delaware State Police Academy and was employed as a Police Officer with the Rehoboth Beach and Bethany Beach Police Departments for five years.

2. On 4/19/06, I was contacted by Peter Bereski, Fraud Investigator, American Express Security, about an American Express ("AMEX") credit card that was being used at a Circuit City store in Wilmington, Delaware. Investigator Bereski stated that the AMEX card was being used to purchase very expensive television sets at the store. However, he said that the credit card account had been suspended by AMEX, due to the card holder's failure to make payments on the account. Investigator Bereski explained that the television set transactions were being made without AMEX's approval.

3. Investigator Bereski stated that the AMEX account belonged to a company known as Consumer Electronics Warehouse and that the name on the credit card was Moshe Benhamou. The account had two other authorized users: Sharon Levy and Michael Bates.

4. Later on 4/19/06, U.S. Secret Service Special Agent Andrew Balceniuk and I interviewed Luis Duran, a Loss Prevention Associate with Circuit City. During the interview, Duran explained how credit card transactions work at the store. He also said that the AMEX card transactions in question were all processed by Tom McLaughlin, a Department Manager at Circuit City. Duran provided a spreadsheet of all of the transactions between McLaughlin and the person presenting the AMEX card, who was later identified as Igal Sharon Levy.

5. Duran explained that when a customer makes a purchase at a Circuit City store with an AMEX credit card, and the AMEX card is initially denied by the store's computer, the Circuit City employee processing the transaction must contact AMEX and obtain an approval code before completing the transaction. Duran said that contrary to this policy, McLaughlin did not contact AMEX to obtain

approval codes at the time of Levy's purchases. Duran stated that when McLaughlin would first attempt to process these sales with the AMEX card, the computer system would not allow the sale to go through, due to the fact the AMEX account was suspended for nonpayment. He said that McLaughlin would then override the computer system to allow these high-dollar purchases to be processed. Duran explained that the only way for this override to be accomplished was with the use of a manager's four digit code and a password. Duran confirmed that all of the AMEX credit card transactions at issue were performed by McLaughlin and that in each, McLaughlin manually overrode the system to allow the sale to go through. Duran also stated that McLaughlin used his employee number to obtain credit for the sale.

6. On 4/19/06, Special Agent Balceniuk and I conducted surveillance at the Circuit City store. Duran also participated in the surveillance. Duran had previously informed us that on this date, the user of the AMEX card was scheduled to pick up four televisions valued at approximately $14,000, which the user had previously purchased. Duran had stated that the card user typically picked up his merchandise from the store at around 5:00 PM. At approximately 5:15 PM a white van entered the Circuit City parking lot. Special Agent Balceniuk and I observed a white male with a baseball cap exit the white van and proceed to the customer pick up area, where the male picked up some items and placed them in the van. After this occurred, Circuit City employees contacted Special Agent Balceniuk and I to let us know that the male in the white van had picked up the televisions that were the subject of our investigation. We then followed the white van to 1102 Society Drive, a part of the Society Business Offices in Claymont, DE. A sign on the door of 1102 Society Drive was titled Consumer Electronics Warehouse. We then observed the defendant unload the televisions into 1102 Society Drive and into an office across the hall from that address.

7. Special Agent Balceniuk and I then approached the building and I observed the televisions through an open door inside the 1102 Society Drive address. I entered the business and made contact with the driver of the white Chevy van. The driver was identified as Igal Sharon Levy. Levy was transported to the U.S. Secret Service's Wilmington Resident Office, where he was interviewed.

8. Special Agent James Smith and I interviewed Levy. At the start of the interview, Levy was provided with *Miranda* warnings via Secret Service form 1737B. Levy signed the form and agreed to speak with us. Levy stated that he started doing business at Circuit City with Tom McLaughlin in January 2006. Levy stated that he would purchase televisions from McLaughlin because McLaughlin would deeply discount the products. Levy stated that he and McLaughlin agreed to not exceed $6,000 per transaction so that no red flags were raised. Levy stated that he knew he was well above his AMEX account limit, but said that he chose to ignore that fact because the sales were going through. Levy stated that he knew that what he was doing was wrong, but said that the temptation of having access to free capital to grow his business was too much. Levy stated that he and

2

McLaughlin were greedy. Levy also said that he was the only person making purchases with the AMEX card.

9. I also confronted Levy with the AMEX credit card application. Levy had filled out the application in October 2005 using identifying information associated with Moshe Benhamou. Levy also said that he put the name Sharon Levy on the application as a registered user and explained that Sharon Levy is one of a number of names that he goes by. Levy said that he filled out the application using Benhamou's identifying information because his own credit was bad due to a former bankruptcy. He also said that he previously had an AMEX card from another business, and still owed AMEX approximately $20,000 from that account. Levy told us that Benhamou is his brother in law and is a silent partner in Consumer Electronics Warehouse. He said that Benhamou was aware that the credit card account was open, but that Benhamou has no idea of the account balance because the AMEX bill is being mailed to a post office box in Delaware.

10. I contacted American Express and confirmed that they are a financial institution whose accounts are insured by the Federal Deposit Insurance Corporation.

11. Levy was also confronted about another AMEX credit card account that had the 1102 Society Drive address affiliated with it. That card was registered in the name of Moses M. Bates and had a Ron Levy as an authorized card user. Levy stated that he and Bates had agreed to use this card to further their Internet business. That card has been revoked and is in arrears for $91,674.88.

12. Levy stated that he started shopping at Circuit City in 2005, and has been dealing with McLaughlin since January 2006, when the fraud began on the AMEX account. Levy estimates that he has fraudulently purchased approximately 110 televisions from McLaughlin using the AMEX card. The 110 televisions are valued at approximately $500,000.00. The total amount of money owed to AMEX on the Moshe Benhamou credit card used by Levy is $577,737.85.

Based on my investigation, I submit that there is probable cause to believe that Igal Sharon Levy has violated 18 USC §1029(b)(2), conspiracy to commit access device fraud and 18 USC § 1014, making a false statement to bank for loan or credit.

WHEREFORE, your affiant prays that this Court issue a criminal complaint for Igal Sharon Levy.

Your affiant, having signed this Affidavit under oath as to all assertions and allegations contained herein, states that its contents are true and correct to the best of his knowledge, information and belief.

Michael S. Armstrong
Special Agent
United States Secret Service

3

SUBSCRIBED AND SWORN TO
BEFORE ME THIS _20_ DAY
OF    _April_    , 2006.


THE HONORABLE MARY PAT THYNGE
UNITED STATES MAGISTRATE JUDGE